UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
ANDRIS KURINS, individually and as a Shareholder of,
SILVERSEAL CORPORATION,

                                  Plaintiff,

      -against-

JOHN SILVERMAN and ALAN SERRINS,

                                Defendants.
-----------------------------------------------------------------------x

Case No.

**NOTICE OF REMOVAL**



Defendants John Silverman and Alan Serrins file this Notice of Removal of the above-described action to the United States District Court for the Southern District of New York from the Supreme Court of the State of New York, County of New York, where the action is now pending as provided by Title 28, U.S. Code, Chapter 89 and state:

    1.    The above-entitled action was commended in the Supreme Court of the State of New York, County of New York, and is now pending in that court. Process was served on defendants on *July 11, 2008.* A copy of the plaintiff's *Complaint* setting forth the claim for relief upon which the action is based was first received by the defendants on July 11, 2008.

    2.    There are no defendants to this action except Defendants John Silverman and Alan Serrins.

    3.    This action was commenced against Defendants in the Supreme Court of the State of New York, County of New York by the Plaintiff, and is of a civil nature alleging violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §1961, *et. seq.* for supposedly improper corporate expenditures. The United States District Court for the Southern District of New York has jurisdiction by reason of 28 U.S.C. §1331 in that the action arises under the Laws of the United States IN that, as appears from the complaint, the plaintiffs base

their claim for relief against the Defendants by virtue of and under the federal statutes and acts of Congress.  The RICO claim is joined with various state and common law claims, which are removable to this Court pursuant to 28 U.S.C. §1441(c).

4.      Defendants further allege that the action was commenced by the filing of the Complaint on July 11, 2008 and the service of process on Defendants on July 11, 2008, and that the time has not elapsed within which they are allowed to file this notice of removal of action to this court.

5.      A copy of all process and pleading served upon defendants is filed with this notice and attached hereto as Exhibit A.  No orders have as yet been entered in this action.

6.      Defendants will give written notice of the filing of this notice as required by 28 U.S.C. §1446(d).

7.      A copy of this notice will be filed with the clerk of the Supreme Court of the State of New York, County of New York as required by 28 U.S.C. §1446(d).

WHEREFORE, Defendants request that this action proceed in this Court as an action properly removed to it.

Dated: New York, New York
      July 31, 2008

                          GARVEY SCHUBERT BARER

                          By:

                              Andrew J. Goodman, Esq. (AG-3406)
                              A Member of the Firm
                              Attorneys for Defendants
                              100 Wall Street, 20th Floor
                              New York, New York 10005
                              (212) 965-4534

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
ANDRIS KURINS, individually and as a Shareholder of,
SILVERSEAL CORPORATION,

**SUMMONS**

                       *Plaintiff,*

        - against –

Index No: O 8 602 048

JOHN SILVERMAN and ALAN SERRINS,

Plaintiff resides at
3 Merrill Road
Norwalk, CT 06851

                      *Defendants.*
-----------------------------------------------------------------------X

**To the above named Defendants:**

      **You are hereby summoned** to answer the Complaint in this action, and to serve a copy of your answer within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

      The basis of the venue designated is CPLR § 509.

Dated: New York, New York
       July 11, 2008

                 Yours, etc.

                 JUDD BURSTEIN, P.C.

                 By:_____
                    Judd Burstein
                 1790 Broadway, Suite 1501
                 New York, New York 10019
                 Tel:   (212) 974-2400
                 Fax:  (212) 974-2944
                 *Attorneys for Plaintiff Andris Kurins,*
                 *individually and as a Shareholder of*
                 *Silverseal Corporation*

To:   **Alan Serrins, Esq.**
233 Broadway, 18th Floor
New York, New York 10279

61 Broadway, 25th Floor
New York, New York 10006

**John Silverman**
19 Fulton Street, 3rd Floor
New York, New York 10038

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
ANDRIS KURINS, individually and as a Shareholder of
SILVERSEAL CORPORATION,                                            Index No. _____

                  *Plaintiff,*

       – against –                                   **COMPLAINT**

JOHN SILVERMAN and ALAN SERRINS,

                 *Defendants.*
-----------------------------------------------------------------------X

       Plaintiff Andris Kurins, by his attorneys, Judd Burstein, P.C., complaining of the Defendants

both individually and as a shareholder of Silverseal Corporation, alleges as follows:

## INTRODUCTION

       1.     This is an action to redress wrongs done to Plaintiff Andris Kurins ("Kurins"), both

as an individual and as a shareholder of Silverseal Corporation ("Silverseal"), by a corrupt lawyer

and his client.

       2.     Commencing as early as January of 2002, and continuing until at least December of

2006, Silverman and Serrins used an escrow account consisting solely of Silverseal's funds –

supposedly maintained by Serrins, as attorney for Silverseal, for the benefit of Silverseal – as a

personal piggy bank for Defendant John Silverman ("Silverman"), the majority owner and President

of Silverseal. Further, compounding his terrible ethical violations, Serrins paid himself out of the

escrow account for purely personal, non-corporate legal services he had rendered to Silverman.

       3.     As a result of these outrageous breaches of fiduciary duty, Silverseal is entitled,

pursuant to *TPL Associates v. Helmsley-Spear, Inc.*, 146 A.D.2d 468, 536 N.Y.S.2d 754 (1st Dep't

1989), and *GRG Group, Inc. v. Ravenal*, 247 A.D.2d 201, 668 N.Y.S.2d 352 (1st Dep't 1998), to

damages in an amount equal to **all** compensation paid to Silverman, and **all** fees paid to Serrins or his firm after January of 2002. Further, because Silverman and Serrins also violated the RICO statute, 18. U.S.C. §§ 1961, *et seq.*, those damages must be trebled together with an award of legal fees.

## PARTIES

4.      Plaintiff Kurins is the owner of 49% of the outstanding stock of Silverseal.

5.      Defendant Silverman is the owner of 51% of the outstanding stock of Silverseal. He is also the President of the company.

6.      At all times relevant to this Complaint, Serrins served as primary outside counsel to Silverseal, as well as personal counsel to Silverman. Commencing in 2007, Serrins joined the Board of Directors.

7.      Nominal Plaintiff Silverseal is a corporation organized under the laws of the State of New York, with its principal place of business in New York County, New York.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

8.      Through its subsidiaries, Silverseal is engaged in the business of corporate security and private investigation.

9.      In late January of 2002, and unbeknownst to Kurins, Silverman and Serrins arranged for the creation of a secret escrow account with Serrins's law firm, Dienst & Serrins LLP ("D&S") to, *inter alia*, permit Silverman to funnel funds to his girlfriend Maria Weissman ("Weissman"), and permit the use of corporate funds to pay Silverman's personal legal expenses.

2

10.     On or about January 28, 2002, Silverman arranged for the deposit of $25,000 in Silverseal funds into the escrow account. On information and belief, Silverman sent this check to Serrins by mail or overnight interstate carrier.

11.     On or about February 21, 2002, Silverman arranged for the deposit of $25,000 in Silverseal funds into the escrow account. On information and belief, Silverman sent this check to Serrins by mail or overnight interstate carrier.

12.     On or abo ut February 26, 2002, Serrins authorized payment of $1,487.50 to Weissman. On information and belief, this payment was made by a check sent to Weissman from Serrins by mail or overnight interstate carrier.   At the time, Weissman was Silverman's girlfriend. Although she is a lawyer, Weissman, on information and belief, had no litigation experience. Nonetheless, in order to fraudulently provide her with tax-deductible monies from Silverseal, Silverman arranged for her to provide entirely superfluous "assistance" to Serrins in connection with a sexual harassment complaint made at Silverseal.  However, with respect to this February 26, 2002 payment, Silverseal's books and records do not even reflect that Weissman ever submitted an invoice.

13.     On or about March 14, 2002, Silverman arranged for the deposit of $12,663.50 in Silverseal funds into the escrow account. On information and belief, Silverman sent this check to Serrins by mail or overnight interstate carrier.

14.     On or about October 1, 2002, Silverman arranged for the deposit of $25,000 in Silverseal funds into the escrow account. On information and belief, Silverman sent this check to Serrins by mail or overnight interstate carrier.

3

15.    In or about late 2002, Silverman advised Kurins that Silverseal should begin creating a "rainy day" fund in the event that one of its subsidiaries, S.E.A.L. Security LLC ("Seal Security") were to someday lose its major client and the parties needed cash to restructure.

16.    Based upon this representation, Kurins agreed that Silverseal should deposit $300,000 into the escrow account. In discussing the matter, Silverman fraudulently hid the fact that the escrow account had been in existence for almost a year and was being used to make improper payments for the benefit of Silverman.

17.    In addition, Silverman needed to inform Kurins about the escrow account because, on or about December 12, 2002, Silverman had used a Silverseal check to funnel $100,000 to Serrins personally, and needed an explanation from Kurins should he enquire about it. On information and belief, the sources of which include the fact that the check has a notation of "Escrow" on it, but it was never deposited into the escrow account, this check was either (a) a payoff to Serrins so that he would allow his escrow account to be used to pay Silverman's non-corporate expenses, or (b) a payment that was then funneled to Silverman by Serrins. On information and belief, Silverman either mailed or sent the check to Serrins by mail or overnight interstate carrier.

18.    The $300,000 was deposited into the escrow account by way of a check, dated December 19, 2002, signed by Kurins. On information and belief, this check was sent to Serrins by mail or overnight interstate carrier.

19.    Following the deposit of the $300,000 into the escrow account, Silverman's and Serrins's fraud continued.

20.    On or about March 18, 2003, the law firm of Kurzman Eisenberg Corbin Lever & Goodman LLP ("Kurzman") sent Silverman an invoice for legal services rendered to him in

4

connection with "Account No. 57054-001M," a matter entitled "Real Estate Entity (Matrimonial)" ("Matrimonial Matter"). These charges were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief, this invoice was either mailed or sent by overnight interstate carrier.

21.    On or about April 1, 2003, Serrins signed a check payable to Kurzman from the escrow account in payment of a number of invoices which included the invoice for the Matrimonial Matter. On information and belief, this check was either mailed or sent by overnight interstate carrier.

22.    On or about April 24, 2003, Kurzman sent Silverman an invoice for legal services rendered to him in connection with "Account No. 57054-003M," a matter entitled "Estate and Will Planning" ("Estate Matter"). These charges were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief, this invoice was either mailed or sent by overnight interstate carrier.

23.    On or about May 2, 2003, Serrins signed a check payable to Kurzman from the escrow account in payment of a number of invoices which included the invoice for the Estate Matter. On information and belief, this check was either mailed or sent by overnight interstate carrier.

24.    On or about July 30, 2003, Serrins authorized payment of $3,850 to Weissman. On information and belief, this payment was made by a check sent to Weissman from Serrins by mail or overnight interstate carrier. Silverseal's records do not reflect any bill for these services.

25.    On or about October 14, 2003, Weissman sent an invoice to Serrins. On information and belief, this invoice was sent to Serrins by mail or overnight interstate carrier.

26.    On or about October 15, 2003, Weissman was paid by a check from Serrins that was, on information and belief, sent to her by mail or overnight interstate carrier.

27.    The manner in which Weissman's October 2003 "bill" was paid further evidences the fact that the invoices and "services" provided by Weissman were merely a conduit for Silverman to give gifts to his girlfriend. Rather than paying Weissman directly from the escrow account, Serrins paid her from his firm's account and then repaid his firm with a check from the escrow account. On information and belief, Serrins paid Weissman in this fashion so that the payments to Weissman would not be reflected in the escrow account bank records were Kurins ever to seek to review them. Further, Serrins immediately approved payment of Weissman's invoice on October 15, 2003. In addition to the fact that this instantaneous approval was in marked contrast to Serrins practice of not paying other lawyers' bills for weeks or months, the invoice submitted by Weissman was totally inadequate in terms of detail. Indeed, it asked for payment for the time that Weissman spent merely depositing an envelope in the mail.

28.    On or about December 3, 2003, Weissman sent a letter to Silverseal in which she discussed the balance of monies left on retainer with her office, and asking for a check for $6,325 "in order to fully replenish the retainer." On information and belief, the books and records of Silverseal do not reflect any retainer agreement with Weissman providing for leaving monies on retainer. Moreover, the amount of money requested by Weissman suggests that she had at one point been paid a $7,500 retainer fee by Silverseal for "legal services." This payment is not reflected in the escrow account records. On information and belief, then, all or at least most of the monies paid to Weissman from the escrow account were not for legal services that she rendered. Rather, to the

6

extent that she did provide "legal services," Silverseal paid for those services directly, and the monies paid from the escrow account were not a proper corporate expense of Silverseal.

29.    On or about December 19, 2003, Weissman sent an invoice to Silverman at Silverseal which reflected that, at some point between December 3 and December 19, Weissman had been paid an amount in excess of $5,000. This money, which, information and belief, was paid through a check that was sent by mail or overnight interstate carrier, did not come from the escrow account.

30.    On or about January 12, 2004, Kurzman sent Silverman an invoice for legal services rendered to Yolanda Rubel for "Estate Planning." The invoice was marked "PERSONAL AND CONFIDENTIAL." Yolanda Rubel is Silverman's mother, and the legal services rendered to her were not a proper Silverseal corporate expense. On information and belief, this invoice was either mailed or sent by overnight interstate carrier.

31.    On or about January 15, 2004, Serrins, either individually or pursuant to his direction, sent Weissman a check for $3,850, curiously the same amount he had sent her the preceding July. On information and belief, this check was sent either by mail or overnight interstate carrier. Moreover, on information and belief, this money was not in payment for legal services, because Weissman's billing records do not reflect any such payment, whereas they do reflect payments directly from Silverseal of $4,225 on or about January 16, 2004, $3,587.50 on or about February 21, 2004, and another $6,000 or more in March of 2004. None of these payments came from the escrow account and, further, none of the payments from the escrow account (other than the October 2003 bill discussed above in Paragraph 25) are supported by bills from Weissman.

32.    On or about March 15, 2004, Kurzman sent Silverman two invoices. On information and belief, these invoices were sent together to Silverman by mail or overnight interstate carrier. The

7

first invoice sought payment of an invoice for legal services rendered to Silverman in connection with the Estate Matter. These services were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense.

33.    The second invoice was for the same legal services rendered to Yolanda Rubel for which Kurzman had sought payment through its January 12, 2004 invoice to Silverman.

34.    On or about May 2, 2003, Serrins signed a check from the escrow account payable to Kurzman in payment of a number of invoices which included the invoice for the Estate Matter and the invoice for the Yolanda Rubel work. On information and belief, this check was either mailed or sent by overnight interstate carrier.

35.    On or about December 16, 2004, Kurzman sent Silverman invoices for legal services rendered to him in the Estate Matter and the Matrimonial Matter. These charges were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief, these invoices were either mailed or sent by overnight interstate carrier.

36.    On or about January 26, 2005, Kurzman resent these invoices to Silverman, together with an additional charge for the Matrimonial Matter. These additional services were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief, these invoices were either mailed or sent by overnight interstate carrier.

37.    On or about February 10, 2005, Serrins signed a check from the escrow account for payment of a D&S invoice dated February 10, 2005. Some of this payment was for personal legal services rendered to Silverman that were not a proper Silverseal corporate expense. The precise breakdown of which charges were for personal services is peculiarly within the knowledge of

8

Serrins. However, at least one of the charges – related to "Montclair Multiples" – was plainly not a legitimate Silverseal corporate expense.

38.    On or about February 28, 2005, Serrins signed a check payable to Kurzman from the escrow account in payment of a number of invoices which included the invoices described above in Paragraphs 35 and 36. On information and belief, this check was either mailed or sent by overnight interstate carrier.

39.    On or about May 11, 2005, Silverman arranged for the deposit of $152,777.24 in Silverseal funds into the escrow account. On information and belief, Silverman sent this check to Serrins by mail or overnight interstate carrier.

40.    On September 21, 2005, Serrins wrote a check from the escrow account to D&S in payment of a September 21, 2005 invoice. Some of this payment was for personal legal services rendered to Silverman and was not a proper Silverseal corporate expense. The precise breakdown of which charges were for personal services is peculiarly within the knowledge of Serrins. However, at least one of the charges – for the drafting of an April 25, 2005 letter to a co-op board – was plainly not a legitimate Silverseal corporate expense.

41.    On or about January 17, 2006, Kurzman sent Silverman an invoice for legal services rendered to him in connection with the Estate Matter. These charges were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief, this invoice was either mailed or sent by overnight interstate carrier.

42.    On or about March 21, 2006, Kurzman sent Silverman an invoice for legal services rendered to him in connection with the Estate Matter, and an invoice for legals services rendered to him in connection with Montclair Multiples. These services were for personal legal services

9

rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief, this invoice was either mailed or sent by overnight interstate carrier.

43.    On or about April 12, 2006, Serrins signed a check payable to Kurzman from the escrow account in payment of the invoice described above in Paragraph 42. On information and belief, this check was either mailed or sent by overnight interstate carrier to Kurzman.

44.    On or about April 21, 2006, Kurzman sent Silverman an invoice for legal services rendered to him in connection with the Estate Matter. These charges were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief this invoice was either mailed or sent by overnight interstate carrier.

45.    On or about April 28, 2006, Serrins signed a check payable to Kurzman from the escrow account which included partial payment of the invoice described above in Paragraph 44. On information and belief, this check was either mailed or sent by overnight interstate carrier to Kurzman.

46.    On or about June 22, 2006, Kurzman sent Silverman an invoice for services rendered to him on the Estate Matter and in connection with Montclair Multiples. These charges were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief, this invoice was either mailed or sent by overnight interstate carrier to Kurzman.

47.    On or about July 10, 2006, Serrins signed a check payable to Kurzman from the escrow account which included payment of the invoice described above in Paragraph 46. On information and belief, this check was either mailed or sent by overnight interstate carrier to Kurzman.

10

48.     On or about October 19, 2006, Silverman arranged for the deposit of $156,968.15 in Silverseal funds into the escrow account. On information and belief, Silverman sent this check to Serrins by mail or overnight interstate carrier.

49.     On or about October 12, 2006, the law firm of Garvey Schubert Barer ("Garvey") sent Silverman an invoice for legal services rendered to him in connection with "Montclair Multiples." These charges were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense. On information and belief, this invoice was either mailed or sent by overnight interstate carrier.

50.     On or about October 30, 2006, Serrins signed a check payable to Garvey from the escrow account in payment of a number of invoices which included the invoice referenced above in Paragraph 49. On information and belief, this check was either mailed or sent by overnight interstate carrier.

51.     On or about December 14, 2006, Serrins directed another authorized signatory on the escrow account to send a check to the law firm of Kossoff & Unger for services rendered or to be rendered to Silverman personally, as opposed to Silverseal. As such, the payment was not for a proper Silverseal expense. On information and belief, this check was either mailed or sent by overnight interstate carrier.

52.     On information and belief, all of the above-described payments were, at the direction of Silverman and Serrins, fraudulently reported to federal and state taxing authorities as legitimate business expenses, as opposed to income to Silverman.

53.     Also on information and belief, other payments from the escrow account to D&S were for personal legal services rendered to Silverman rather than services rendered to Silverseal. The

11

details of these payments are peculiarly within Serrins's knowledge due to the vagueness of his time entries.

## ABSENCE OF A DEMAND

54.    No demand upon Silverseal's Board of Directors has been made pursuant to B.C.L. § 626(c) because, given that Silverman and Serrins control the Board, such demand would be futile.

## FIRST CAUSE OF ACTION

55.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

56.    Silverseal is an enterprise as that term is defined by 18 U.S.C. § 1961(4). The affairs of Silverseal affect interstate and foreign commerce.

57.    From January 2002, through at least December 2006, Defendants have knowingly and intentionally participated in the scheme to defraud Plaintiff and Silverseal that is alleged above in Paragraphs 8 through 53. The scheme was also a scheme to defraud federal and state taxing authorities. Defendants caused at least those mailings or overnight deliveries by interstate carrier service detailed above in Paragraphs 10-14, 17-18, 20-27, 29-32, 34-36, 38-39, and 41-51. In addition, fraudulent federal and state tax returns were mailed on dates peculiarly within the knowledge of Defendants.

58.    The contents of these mailings or overnight interstate carrier deliveries served to further the schemes to defraud set forth above, although the content of any particular mailing or overnight interstate carrier delivery may not have been fraudulent. Each such mailing or overnight interstate carrier delivery was foreseeable to each of the Defendants as part of the schemes to defraud

12

and each such mailing or overnight interstate carrier delivery was a separate violation of 18 U.S.C.

§ 1341 by Defendants.

59.    As a result thereof, Defendants have engaged in a pattern of racketeering as that term

is defined by 18 U.S.C. § 1961(5).

60.    Silverman participated in the operation and management of Silverseal through his role

as President and majority shareholder of the company.

61.    Although Serrins served as outside counsel to Silverseal, he nonetheless participated

in its operation and management because his services far exceeded the rendering of legal advice and

constituted actual participation in and management of the fraudulent scheme by approving payments

from the escrow account for Silverman's personal expenses and indeed by paying his own firm for

non-corporate services rendered to Silverman.

62.    Defendants thereby participated in the operation and management of Silverseal

through the pattern of racketeering activity alleged above.

63.    By reason thereof, Silverseal has been injured in its property and business and

Plaintiff, on behalf of Silverseal, is entitled to recover three times its actual damages plus attorneys'

fees.

### SECOND CAUSE OF ACTION

64.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated

in this Paragraph.

65.    Defendants each owed fiduciary duties to Silverseal and breached those duties.

66.    Each of the Defendants knowingly participated in and provided substantial assistance

to the other's breach of his fiduciary duties.

13

67.    By reason of these breaches of fiduciary duty, Plaintiff, on behalf of Silverseal, is entitled to recover its actual damages as determined at trial, including all compensation earned by Defendants after January of 2002, as a result of their relationship with Silverseal.

68.    In addition, because Defendants' conduct was wanton, willful and malicious, Plaintiff, on behalf of Silverseal, should be awarded punitive damages as determined at trial.

69.    Pursuant to B.C.L. § 626(e), Plaintiff should be awarded reasonable expenses, including reasonable attorneys' fees.

### THIRD CAUSE OF ACTION

70.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

71.    Defendants defrauded Silverseal.

72.    By reason of this fraud, Plaintiff, on behalf of Silverseal, is entitled to recover its actual damages as determined at trial.

73.    In addition, because Defendants' conduct was wanton, willful and malicious, Plaintiff, on behalf of Silverseal, should be awarded punitive damages as determined at trial.

74.    Pursuant to B.C.L. § 626(e), Plaintiff should be awarded reasonable expenses, including reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION

75.    Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

76.    As Silverseal's attorney, Serrins owed a direct fiduciary duty to Plaintiff as a minority shareholder of Silverseal, and breached that duty.

14

77.    Silverman knowingly participated in and gave substantial assistance to Serrins in his breach of his fiduciary duty to Plaintiff.

78.    By reason of the breaches of fiduciary duty described above, as well as other breaches, Plaintiff is entitled to recover actual damages as determined at trial.

79.    In addition, because Serrins's conduct was wanton, willful and malicious, Plaintiff should be awarded punitive damages as determined at trial.

**WHEREFORE**, Plaintiff demands judgment as follows:

A.    On Plaintiff's First Cause of Action, three times Plaintiff's actual damages, plus legal fees and expenses;

B.    On Plaintiff's Second and Third Causes of Action, Plaintiff's actual damages as proven at trial, an award of punitive damages, and Plaintiff's reasonable expenses, including reasonable attorneys' fees; and

C.    On Plaintiff's Fourth Cause of Action, Plaintiff's actual damages as proven at trial, as well as an award of punitive damages; and

D.    A Judgment and Order granting such other and further relief as deemed just and proper by the Court.

Dated: July 11, 2008
      New York, New York

                                    JUDD BURSTEIN, P.C.

                                    By_____
                                    Judd Burstein
                                    1790 Broadway
                                    New York, New York 10019
                                    (212) 974-2400
                                    (212) 974-2944 (Fax)
                                    jburstein@burlaw.com

16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X

ANDRIS KURINS, individually and as a Shareholder of,
SILVERSEAL CORPORATION,

                              *Plaintiff,*

                    - against –

JOHN SILVERMAN and ALAN SERRINS,

                              *Defendants.*
-----------------------------------------------------------------------X

**AFFIDAVIT OF SERVICE**

Index No: 08/602048

Plaintiff resides at
3 Merrill Road
Norwalk, CT 06851

STATE OF NEW YORK, COUNTY OF NEW YORK        :SS:

   **SANDRA GUZMAN**    being duly sworn, deposes and says:
 I am over 18 years of age, not a party to this action, and reside in Rego Park, New York.  That on
the 11th day of July, 2008, I served a true copy of the within **SUMMONS and attached
COMPLAINT**

Upon:      **Alan Serrins, Esq.**
           233 Broadway, 18th Floor
           New York, New York 10279

**FILED**

JUL 21 2008

NEW YORK

the **Defendant** herein named, by delivering 1 (one) true copy of such to personally upon Zulma E
Verdejo, receptionist for Alan Serrins, Esq,..

    Deponent describes the person served as aforesaid to the best of deponent's ability at the time
and circumstances of the aforesaid service as follows:

   SEX: Female         EYES: Brown          HAIR: Brown
   APP. AGE: 50        APP. HT: 5' 1"       APP. WT: 175 lbs.

    Deponent further says: that at the time of such service I knew the person so served as
aforesaid to be the same person described in the aforementioned **SUMMONS and attached
COMPLAINT**.

Sworn to before me this
11th day of July, 2008

_____
Notary Public

_____
SANDRA GUZMAN

PAUL GUZMAN
Notary Public, State of New York
No. 01GU6081645
Qualified in Queens County
Commission Expires 10/15/2010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

ANDRIS KURINS, individually and as a Shareholder of,
SILVERSEAL CORPORATION,

**AFFIDAVIT OF SERVICE**

*Plaintiff,*

- against –

Index No: 08/602048

JOHN SILVERMAN and ALAN SERRINS,

Plaintiff resides at
3 Merrill Road
Norwalk, CT 06851

*Defendants.*

-------------------------------------------------------------------X

STATE OF NEW YORK, COUNTY OF NEW YORK        :SS:

**ROGAN MCCALLY**    being duly sworn, deposes and says:

I am over 18 years of age, not a party to this action, and reside in Westport, Connecticut.  That on the 11th day of July, 2008, I served a true copy of the within **SUMMONS and attached COMPLAINT**

Upon:        John Silverman, Esq.
             19 Fulton Street 3rd Floor
             New York, New York 10038

the **Defendant** herein named, by delivering 1 (one) true copy of such to personally upon the Receptionist for John Silverman, Esq.

Deponent describes the person served as aforesaid to the best of deponent's ability at the time and circumstances of the aforesaid service as follows:

SEX: Female        EYES: Brown        HAIR: Dark Blond
APP. AGE: 45       APP. HT: 5' 5"     APP. WT: 160 lbs.

Deponent further says: that at the time of such service I knew the person so served as aforesaid to be the same person described in the aforementioned **SUMMONS and attached COMPLAINT**.

Sworn to before me this
11th day of July, 2008

_____
Notary Public

_____
**ROGAN MCCALLY**

PAUL GUZMAN
Notary Public, State of New York
No. 01GU6081645
Qualified in Queens County
Commission Expires 10/15/2010