UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ANDRIS KURINS, individually and as a Shareholder of
SILVERSEAL CORPORATION,                                        08-CIV-6886 (LTS)

                   *Plaintiff,*

      – against –                                        **ORAL ARGUMENT
REQUESTED**

JOHN SILVERMAN and ALAN SERRINS,

                   *Defendants.*

-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400
(212) 974-2944 (Fax)
jburstein@burlaw.com

*Attorneys for Plaintiff*

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

THE COMPLAINT ADEQUATELY
PLEADS A RICO CLAIM  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    EACH DEFENDANT COMMITTED TWO
      OR MORE ACTS OF RACKETEERING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      1.    Existence of a Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      2.    Use of the Mails in Furtherance of the Scheme . . . . . . . . . . . . . . . . . . . . 9

            a.    The Mails Were Used to Execute the Scheme . . . . . . . . . . . . . . . . . 10

            b.    Defendants Caused the Mailings . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      3.    Specific Intent to Defraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      4.    Detrimental Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.    DEFENDANTS' ACTS OF RACKETEERING
      CONSTITUTE A PATTERN  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

POINT II

PLAINTIFF'S STATE LAW CLAIMS
SHOULD NOT BE DISMISSED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

<u>CASES</u>

*Andersen v. Weinroth,*
    48 A.D.3d 121, 849 N.Y.S.25 210 (1st Dep't 2007) ............................ 2

*Bank of China v. NBM LLC,*
    359 F.3d 171 (2d Cir. 2004) ................................................. 5

*Beck v. Prupis,*
    529 U.S. 494, 120 S.Ct. 1608 (2000) ........................................ 12

*Carlson v. A.L.S. Enterprises, Inc.,*
    No. 07-3970, 2008 U.S. Dist. LEXIS 3981 (D. Minn. Jan. 18, 2008) ............... 8

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,*
    187 F.3d 229 (2d Cir. 1999) ................................................ 17

*Compare Feirstein v. Nanbar Realty Corp.,*
    963 F.Supp. 254 (S.D.N.Y. 1997) ........................................... 22

*Executive Photo, Inc. v. Norrell,*
    765 F.Supp. 844 (S.D.N.Y. 1991) ........................................... 20

*First Capital Asset Management, Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004) ........................................... 4,12,19

*Fountain v. United States,*
    357 F.3d 250 (2d Cir. 2004) ................................................ 18

*Fresh Meadows Food Services, LLC v. RB 175 Corp.,*
    No. 06-49050-CV, No. 07-0269-CV,
    2008 U.S. App. LEXIS 13392 (2d Cir. June 24, 2008) .......................... 19

*Fresh Meadows Food Services, LLC v. RB 175 Corp.,*
    No. 04-cv-4767, 2006 U.S. Dist. LEXIS 68647 (E.D.N.Y. Sept. 25, 2006) .......... 19

*GICC Capital Corp. v. Technology Finance Group, Inc.,*
    67 F.3d 463 (2d Cir. 1995) ................................................. 19

*Greene v. Greene,*
    56 N.Y.2d 86, 92, 451 N.Y.S.2d 46 (1982) .................................... 6

*H.J., Inc. v. Northwestern Bell Telephone, Inc.,*
    492 U.S. 229, 109 S.Ct. 2893 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Healey v. Pyle,*
    No. 89 Civ. 6027, 1992 U.S. Dist. LEXIS 4152 (S.D.N.Y. Apr. 3, 1992) . . . . . . . . . . 13

*Hecht v. Commerce Clearing House, Inc.,*
    897 F.2d 21 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Kaufman v. Cohen,*
    307 A.D.2d 113; 760 N.Y.S.2d 157 (1st Dep't 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lenz v. Associated Inns and Restaurants,*
    833 F.Supp. 362 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lerner v. Fleet Bank, N.A.,*
    459 F.3d 273 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McLaughlin v. Anderson,*
    962 F.2d 187 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,*
    1994 U.S. Dist. LEXIS 2929, No. 91 Civ. 2923,
    1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mezzonen, S.A. v. Wright,*
    No. 97 Civ. 9380, 1999 U.S. Dist. LEXIS 17625 (S.D.N.Y. Nov. 15, 1999) . . . . . . . . . . 5

*Miltland Raleigh-Durham. v. Myers,*
    807 F. Supp. 1025 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moss v. Morgan Stanley, Inc.,*
    719 F.2d 5 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,14

*Patrick Carter Assoc., Inc. v. Rent Stabilization Ass'n,*
    1990 U.S. Dist. LEXIS 15975, No. 89 Civ. 7716,
    1990 WL 195993 (S.D.N.Y. Nov. 28, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pereira v. United States,*
    347 U.S. 1, 74 S. Ct. 358 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,13

*Quasha v. Am. Natural Bev. Corp.,*
    171 A.D.2d 537, 567 N.Y.S.2d 257 (1st Dep't 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Robertson v. Seidman & Seidman,*
    609 F.2d 583 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rothberg v. Chloe Foods Corp.,*
    No. CV-06-5712, 2007 U.S. Dist. LEXIS 53194 (E.D.N.Y July 25, 2007) . . . . . . . . . . 18

*Schmuck v. United States,*
    489 U.S. 705, 109 S. Ct. 1443 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Scott v. de Perio,*
    No. 02-CV-578A, 2005 U.S. Dist. LEXIS 5508 (W.D.N.Y. Mar. 25, 2005) . . . . . . . . . 23

*SEC v. Penthouse International, Inc.,*
    390 F. Supp. 2d 344 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Spencer Trask Software and Information Services LLC v. Rpost International Limited,*
    383 F.Supp.2d 428 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Spool v. World Child International Adoption Agency,*
    520 F.3d 178 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,11

*Tomoka Re Holdings, Inc. v. Loughlin,*
    No. 03 Civ. 9404, 2004 U.S. Dist. LEXIS 8931 (S.D.N.Y. May 19, 2004) . . . . . . . 14-15

*Topps Co. v. Cadbury Stani S.A.I.C.,*
    380 F.Supp.2d 250 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*TPL Associates, Inc. v. Helmsley-Spear, Inc.,*
    146 A.D.2d 468, 536 N.Y.S.2d 754 (1st Dep't 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Travelers Indemnity Company of Illinois v. Metropolitan Life Insurance Company,*
    798 F.Supp. 156 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Truck-Lite Co., Inc. v. GS1 US, Inc.,*
    No. 07-CV-68A, 2008 U.S. Dist. LEXIS 24560 (W.D.N.Y. Mar. 27, 2008) . . . . . . . . . 17

*Tzolis v. Wolff,*
   No. 108353/05, 2006 NY Slip Op 50851U (N.Y. Sup. Ct. Mar. 20, 2006),
   *aff'd in part and modified in part,* No. 108353/05,
   2007 NY Slip Op 1190 (N.Y. App. Div. 1st Dep't Feb. 8, 2007) ................ 6,23

*United States v. Indelicato,*
   865 F.2d 1370 (1989) ..................................................... 18

*United States v. Mulhall,*
   428 F.Supp.2d 82 (D. Conn. 2006) ...................................... 13

*United States v. Ramirez,*
   420 F.3d 134 (2d Cir. 2005) ............................................. 11

*United States v. Reed,*
   639 F.2d 896 (2d Cir. 1981) ............................................. 13

*United States v. Reifler,*
   446 F.3d 65 (2d Cir. 2006) .............................................. 10

*United States v. Skelly,*
   442 F.3d 94 (2d Cir. 2006) ............................................. 6-7

*United States v. Trapilo,*
   130 F.3d 547 (2d Cir. 1997) .............................................. 5

*United States v. Wallach,*
   935 F.2d 445 (2d Cir. 1991) ........................................... 7,10

*Vaughn v. Air Line Pilots Assoc., Int'l,*
   No. 03-CV- 4822, 2008 U.S. Dist. LEXIS 56741 (E.D.N.Y. July 24, 2008) .......... 9

*Wynder v. McMahon,*
   360 F.3d 73 (2d Cir. 2004) .............................................. 2

*Zito v. Leasecomm Corporation,*
   No. 02 Civ. 8074, 2004 U.S. Dist. LEXIS 19778 (S.D.N.Y. Sept. 30, 2004) ......... 11

*Zola v. Gordon,*
   685 F.Supp. 354 (S.D.N.Y. 1988) ..................................... 15-16

STATUTES

18 U.S.C. § 1962 ........................................................... 2,3,4

18 U.S.C. § 1341 ......................................................... 3,4,9,17

18 U.S.C. § 1961 ........................................................... 3,4

Fed.R.Civ.P. 8 .............................................................. 2

Fed.R.Civ.P. 9 .......................................................... *passim*

Fed.R.Civ.P. 15 ............................................................ 13

Federal Sentencing Guideline § 3B1.1 ........................................ 21

U.S.C. Fed. Rules App. Proc. R. 32.1. ....................................... 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ANDRIS KURINS, individually and as a Shareholder of
SILVERSEAL CORPORATION,                                          08-CIV-6886 (LTS)

                          *Plaintiff,*

        – against –

JOHN SILVERMAN and ALAN SERRINS,

                          *Defendants.*
-----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

        Plaintiff Andris Kurins ("Kurins" or "Plaintiff") submits this memorandum of law in

opposition to Defendant John Silverman ("Silverman") and Defendant Alan Serrins's ("Serrins")

(collectively, "Defendants") motion to dismiss the Complaint on the grounds that (a) it fails to state

a claim upon which relief may be granted, and (b) if the Court does not uphold the RICO claim, it

should not exercise jurisdiction over Plaintiff's State law claims.[1]  In essence, Defendants have

removed this case to Federal court after Plaintiff filed it in the New York State Supreme Court, and

now seek to send it back to State Court.

### ARGUMENT

### POINT I

### THE COMPLAINT ADEQUATELY PLEADS A RICO CLAIM

        Before turning to a detailed discussion of Defendants' motion, we first address Defendants'

claim that "Plaintiff's complaint does not allege that either defendant violated subsection (a), (b),

---

        [1]        Defendants also allege improper service of process.  In answer to that claim, we have
re-served the Defendants, and have filed new affidavits of service with the Court.

(c) or (d) of Section 1962." (Defendants' Memorandum of Law, dated August 8, 2008 ("MOL"),

at p. 8). This frivolous argument should inform the Court's view of Defendants' other arguments.

It would appear that Defendants are seeking to rely upon the formalistic argument that the

Complaint is defective because Plaintiff failed to explicitly identify the precise subsection of § 1962

upon which he seeks relief. The problem with this argument is that Fed. R. Civ. P. 8's "liberal

pleading principles do not permit dismissal for failure in a complaint to cite a statute, or to cite the

correct one.... Factual allegations alone are what matters." *Wynder v. McMahon*, 360 F.3d 73, 77

(2d Cir. 2004) (Internal quotations and citation omitted).[2]

Plainly, even a cursory reading of the Complaint demonstrates that, as a facial matter,

Plaintiff has specifically alleged a violation of 18 U.S.C. § 1962(c), which makes it "unlawful for

any person employed by or associated with any enterprise engaged in, or the activities of which

affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct

of such enterprise's affairs through a pattern of racketeering activity...."

Under governing law, a plaintiff seeking relief under 18 U.S.C. § 1962 (c) is required to:

> [A]llege the existence of seven constituent elements: (1) that the defendant (2)
> through the commission of two or more acts (3) constituting a "pattern" (4) of
> "racketeering activity" (5) ... participates in (6) an "enterprise" (7) the activities of
> which affect interstate or foreign commerce.... [In addition, p]laintiff must allege that
> he was "injured in his business or property **by reason of** a violation of section 1962."

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (Emphasis in original).

---

[2]    While Defendants rely upon Fed. R. Civ. P. 9(b) in their motion, Rule 9(b) applies
only to the Complaint's allegations of mail fraud as racketeering acts. *See McLaughlin v. Anderson*,
962 F.2d 187, 191 (2d Cir. 1992). The rest of the RICO claim is governed by Fed. R. Civ. P. 8. *See
Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26, n. 4 (2d Cir. 1990).

Here, putting aside the issues (discussed below) of whether all of these elements have been properly pleaded, there can be no doubt that the elements of § 1962(c) have all been identified in the Complaint:

> Silverseal [Corporation] is an enterprise as that term is defined by 18 U.S.C. § 1961(4). The affairs of Silverseal affect interstate and foreign commerce.
>
> From January 2002, through at least December 2006, Defendants have knowingly and intentionally participated in the scheme to defraud Plaintiff and Silverseal that is alleged above in Paragraphs 8 through 53.... Defendants caused at least those mailings or overnight deliveries by interstate carrier service detailed above in Paragraphs 10-14, 17-18, 20-27, 29-32, 34-36, 38-39, and 41-51.
>
> The contents of these mailings or overnight interstate carrier deliveries served to further the schemes to defraud set forth above, although the content of any particular mailing or overnight interstate carrier delivery may not have been fraudulent. Each such mailing or overnight interstate carrier delivery was foreseeable to each of the Defendants as part of the schemes to defraud and each such mailing or overnight interstate carrier delivery was a separate violation of 18 U.S.C. § 1341 by Defendants.
>
> As a result thereof, Defendants have engaged in a pattern of racketeering as that term is defined by 18 U.S.C. § 1961(5).
>
> [Defendant John] Silverman participated in the operation and management of Silverseal through his role as President and majority shareholder of the company.
>
> Although [Defendant Alan] Serrins served as outside counsel to Silverseal, he nonetheless participated in its operation and management because his services far exceeded the rendering of legal advice and constituted actual participation in and management of the fraudulent scheme by approving payments from the escrow account for Silverman's personal expenses and indeed by paying his own firm for non-corporate services rendered to Silverman.
>
> Defendants thereby participated in the operation and management of Silverseal through the pattern of racketeering activity alleged above.

(Complaint at ¶¶ 56-62).

The only thing missing from these paragraphs is an allegation that explicitly tracks the language of § 1962(c) by stating that the Defendants "conduct[ed] or participate[d], directly or indirectly, in the conduct of [Silverseal's] affairs through a pattern of racketeering activity." Instead, the Complaint states that Defendants "participated in the operation and management of Silverseal through the pattern of racketeering activity alleged above." (Complaint at ¶ 62). Of course, under governing law, one can only "participate ... in the conduct of [an] enterprise's affairs" by participating in the "operation and management" of that enterprise. *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004). Hence, anyone reading the Complaint in light of the governing law could not possibly be confused as to the fact that Plaintiff is alleging a violation of § 1962(c).

That being said, we now proceed to demonstrate why the Complaint should not be dismissed.

Defendants' motion claims that the Complaint is deficient because it fails to adequately plead (a) two acts of racketeering with the particularity required by Fed. R. Civ. P. 9(b), and (b) the existence of a pattern of racketeering activity.[3] We shall discuss these two elements below, and, in the process, answer all of Defendants' objections to the Complaint.

## A.    EACH DEFENDANT COMMITTED TWO OR MORE ACTS OF RACKETEERING

The Complaint alleges that the Defendants committed 33 acts of mail fraud in violation of 18 U.S.C. § 1341. (Complaint at ¶¶ 10-14; 17-18; 20-26; 29-30; 32; 34-36; 38-39; 41-52). Section 1341 is one of the crimes that falls within 18 U.S.C. § 1961(1)'s definition of "racketeering activity."

---

[3]    Defendants also contend that Plaintiff has failed to show injury to himself personally from the alleged RICO violation. We do not address this argument because we agree that the only party who may recover on the RICO claim is Silverseal Corporation ("Silverseal"), and that is the only party for whom the Complaint in fact seeks relief. Significantly, though, Defendants do not contend that there is an injury/causation issue with respect to Silverseal.

4

"[T]he elements of a claim of mail or wire fraud are (1) the existence of a scheme to defraud involving money or property, and (2) the use of the mails or wires in furtherance of the scheme.... Further, a plaintiff must allege (3) a specific intent to defraud, either by devising, participating in, or abetting the scheme." *Mezzonen, S.A. v. Wright*, No. 97 Civ. 9380, 1999 U.S. Dist. LEXIS 17625, at *21 (S.D.N.Y. Nov. 15, 1999) (McKenna, D.J.). In addition, in a civil RICO case, a plaintiff must also allege "detrimental reliance." *Bank of China v. NBM LLC*, 359 F.3d 171, 177 (2d Cir. 2004).

## 1.    Existence of a Scheme

"The term 'scheme to defraud' is measured by a nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society." *United States v. Trapilo*, 130 F.3d 547, 550, n. 3 (2d Cir. 1997) (Citations and quotations omitted). Here, the Complaint explicitly alleges the nature and goal of the scheme: "to defraud Plaintiff and Silverseal [as] alleged above in Paragraphs 8 through 53." (Complaint at ¶ 57). Paragraph 9 in turn details the goal of the scheme: to "permit Silverman to funnel funds to his girlfriend Maria Weissman ("Weissman"), and permit the use of corporate funds to pay Silverman's personal legal expenses." In addition, the Complaint alleges another scheme – alleged only to establish the "pattern" element of the RICO claim (*see infra*, at POINT B) – to defraud "federal and state taxing authorities" (Complaint at ¶ 57), by disguising Silverseal's payment of Silverman's personal expenses "as legitimate business expenses, as opposed to income to Silverman." (Complaint at ¶ 52).

Because the Complaint alleges that Silverman was the President of Silverseal (Complaint at ¶ 5), there can be no doubt that he was a fiduciary of Silverseal. *See Quasha v. Am. Natural Bev. Corp.*, 171 A.D.2d 537, 567 N.Y.S.2d 257 (1st Dep't 1991). Similarly, as Silverseal's attorney,

5

Serrins owed a fiduciary duty to the company as his client. *Greene v. Greene*, 56 N.Y.2d 86, 92,

94-95, 451 N.Y.S.2d 46, 50-51 (1982). Indeed, Serrins also owed a fiduciary duty directly to Kurins

as a minority shareholder in Silverseal. *See Tzolis v. Wolff*, No. 108353/05, 2006 NY Slip Op

50851U (N.Y. Sup. Ct. Mar. 20, 2006), *aff'd in part and modified in part*, No. 108353/05, 2007 NY

Slip Op 1190 (N.Y. App. Div. 1st Dep't Feb. 8, 2007).

> The Complaint further alleges:

> > In late January of 2002, and **unbeknownst to Kurins**, Silverman and Serrins arranged for the creation of a secret escrow account with Serrins's law firm, Dienst & Serrins LLP ("D&S") to, *inter alia*, permit Silverman to funnel funds to his girlfriend Maria Weissman ("Weissman"), and permit the use of corporate funds to pay Silverman's personal legal expenses.

> > \* \* \*

> > In or about late 2002, Silverman advised Kurins that Silverseal should begin creating a "rainy day" fund in the event that one of its subsidiaries, S.E.A.L. Security LLC ("Seal Security") were to someday lose its major client and the parties needed cash to restructure.

> > Based upon this representation, Kurins agreed that Silverseal should deposit $300,000 into the escrow account. In discussing the matter, **Silverman fraudulently hid the fact that the escrow account had been in existence for almost a year and was being used to make improper payments for the benefit of Silverman.**

(Complaint at ¶¶ 9 and 15-16) (Emphasis supplied).

These acts of concealment constitute a fraud against the corporation because "instead of an

affirmative misrepresentation, a fraud cause of action may be predicated on acts of concealment....

Thus, **where a fiduciary relationship exists, 'the mere failure to disclose facts which one is**

**required to disclose may constitute actual fraud, provided the fiduciary possesses the requisite**

**intent to deceive.'** *Kaufman v. Cohen*, 307 A.D.2d 113, 119-120, 760 N.Y.S.2d 157, 165 (1st Dep't

2003) (Emphasis supplied, citation omitted); *accord United States v. Skelly,* 442 F.3d 94, 97-98 (2d

Cir. 2006); *United States v. Wallach*, 935 F.2d 445, 465 (2d Cir. 1991) ("Chinn was a director of Wedtech at the time of these alleged improper payments. As such he owed a fiduciary duty to the corporation and its shareholders to disclose fully the true purpose of the payments he received.").

Defendants also claim that Plaintiff has failed to plead the fraud with the particularity required by Fed. R. Civ. P. 9(b). They are wrong. Rule 9(b) requires a Plaintiff to "state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." *Spool v. World Child International Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2007). Plaintiff has alleged all of these with particularity and without pleading on information and belief.[4] Rather than simply restate what the Complaint alleges, we respectfully refer the Court to Paragraphs 8 through 51 of the Complaint to see that the requirements of Rule 9(b) have been fully met. In particular, we note that Paragraphs 10-14, 17-18, 20-26, 29-30, 32, 34-36, 38-39 and 41-52 each identify (a) the party from whom and to whom each bill or check was sent, (b) the date each bill or check was sent, and (c) the specific non-corporate legal services for which payment was sought and/or received.

Nonetheless, Defendants contend:

> Moreover, plaintiff fails to state how any of the acts of which he complains were wrongful. For example, plaintiff alleges that various law firm invoices were paid out of the escrow account that were charges for personal legal services rendered to Silverman and not a proper Silverseal particular charge. Complaint, ¶¶17, 20, 28, and 35. Yet, plaintiff does not detail the specific attorney's work or explain how the work was for Silverman's personal benefit rather than Silverseal's.

(MOL at p. 9).

---

[4]    Defendants mistakenly contend that Plaintiff has alleged the fraud on information and belief. In fact, the information and belief pleading in the Complaint relates to only the issue of whether bills or checks were mailed or sent by interstate carrier. As demonstrated *infra*, those allegations are not governed by Rule 9(b).

This argument misapprehends the role of Fed. R. Civ. P. 9, which "is designed to ensure that a defendant is informed sufficiently of the allegations against him such that he is in a position to answer the complaint and prepare a defense." *SEC v. Penthouse International, Inc.*, 390 F. Supp. 2d 344, 351 (S.D.N.Y. 2005) (Sweet, D.J.); *see also Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). Here, Plaintiff has done just that. By way of example, Paragraph 20 of the Complaint (one of the Paragraphs referred to in the above quotation from the MOL) provides in relevant part:

> On or about March 18, 2003, the law firm of Kurzman Eisenberg Corbin Lever & Goodman LLP ("Kurzman") sent Silverman an invoice for legal services rendered to him in connection with "Account No. 57054-001M," a matter entitled "Real Estate Entity (Matrimonial)" ("Matrimonial Matter"). These charges were for personal legal services rendered to Silverman and were not a proper Silverseal corporate expense.

Thereafter, Paragraph 21 goes on to allege: "On or about April 1, 2003, Serrins signed a check payable to Kurzman from the escrow account in payment of a number of invoices which included the invoice for the Matrimonial Matter."

We are at a loss as to how these allegations do not meet the strictures of Rule 9(b), as they identify (a) who sent the invoice, (b) the approximate date that the invoice was sent, (c) the specific account number referenced on the invoice at issue, (d) the billing entry in question as relating to a "Matrimonial" matter, (e) who signed the check in payment of the invoice, and (f) the approximate date that the payment was sent. It is absurd even to suggest that Plaintiff also had an obligation to identify the names of the attorneys listed as billing on the challenged matter when the specifically identified document itself reveals who worked on the specifically identified matter. *See Carlson v. A.L.S. Enterprises, Inc.*, No. 07-3970, 2008 U.S. Dist. LEXIS 3981, at *8 (D. Minn. Jan. 18, 2008) ("[T]he Court does not believe that a complaint must be suffused with every minute detail of a misrepresentation in order for Rule 9(b) to be satisfied.").

8

Nor is it plausible for Defendants to contend that an allegation which identifies billing for a matter entitled "Real Estate Entity (**Matrimonial**)" (emphasis supplied), as a non-corporate expense is somehow insufficient because it also does not "explain how the work was for Silverman's personal benefit, rather than Silverseal's." *See Vaughn v. Air Line Pilots Assoc., Int'l*, No. 03-CV-4822, 2008 U.S. Dist. LEXIS 56741, at *68 (E.D.N.Y. July 24, 2008) ("ALPA does not appear to challenge plaintiffs' allegations regarding the details of the alleged fraudulent acts – 'the contents of the communications, who was involved, where and when they took place.... – but whether the FAC sufficiently explains how the acts were fraudulent. Since plaintiffs' allegations of mail and wire fraud consist simply of the posting of defendants' various false promises and statements on the respective websites of ALPA and US Airways, ALPA argues that plaintiffs have failed to adequately show how the various statements were fraudulent. To the contrary, the FAC is quite detailed in its factual allegations, which enables the Court to easily infer plaintiffs' allegations of fraud. The degree of detail ALPA seeks to hold plaintiffs accountable for is not required by Rule 9(b).") (Citation omitted).

### 2.    <u>Use of the Mails in Furtherance of the Scheme</u>

The "mailing" requirement of § 1341[5] contains, in the words of the statute, two elements: (a) that the mails or interstate carriers were used "for the purpose of executing the scheme," and (b) that the defendant "knowingly caus[ed]" that use.

With respect to the first element, "the use of the mails need not be an essential element of the scheme.... It is sufficient for the mailing to be 'incident to an essential part of the scheme...,' or

---

[5]    Section 1341 also prohibits executing a fraud through any "private or commercial interstate carrier."

'a step in [the] plot.'" *Schmuck v. United States*, 489 U.S. 705, 710-711, 109 S. Ct. 1443, 1448 (1989) (Citations omitted). As for the second element, "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira v. United States*, 347 U.S. 1, 8-9, 74 S. Ct. 358, 363 (1954); *accord United States v. Reifler*, 446 F.3d 65, 78 (2d Cir. 2006).

### a.    The Mails Were Used to Execute the Scheme

As alleged in Paragraphs 10-14, 17-18, 20-26, 29-30, 32, 34-36, 38-39 and 41-52 of the Complaint, bills for legal services rendered by certain law firms to Silverman personally for non-corporate expenses were mailed to Serrins's office, and Serrins's office mailed back checks – often signed by Serrins – to those law firms. These mailings are more than sufficient to show that mails were, at a minimum, "a step in the plot." *See Schmuck*, 489 U.S. at 711, 109 S. Ct. at 1448.

*United States v. Wallach*, 935 F.2d 445, 54-59, makes our point:

> Count Eighteen charged Chinn individually with committing mail fraud in connection with his submission of credit card receipts for reimbursement. According to the government, Chinn had a side deal, which was approved by Guariglia and one other Wedtech official, whereby Chinn was permitted to spend up to $ 100,000 annually for personal expenses on his Wedtech corporate credit cards. During the thirteen month period from September 1985 through November 1986, Chinn utilized his Wedtech credit cards for his personal benefit by purchasing approximately $ 23,000 in goods and services. The indictment charged that the mail fraud occurred when Diners Club and American Express mailed monthly account statements to Wedtech for payment. Chinn attacks these charges on [the ground that] ... the mailings were made by the credit card companies not by Chinn...,
>
> * * *
>
> We conclude that under the government's theory the credit card billings were central to the scheme and essential to its continued success. This was not to be a "one shot" proposition.... Rather, the intention of the scheme was to enhance Chinn's compensation by paying him periodically for personal expenses that he incurred.

> Such payments were to be made under the guise of reimbursements for business related expenses. Absent the regular credit card company mailings, Wedtech could not have treated these payments as reimbursements for business expenses and Chinn's ability to continue to receive the payments would have come to an end.

(Citations omitted).

So too here, the scheme to have Silverseal pay for Silverman's personal legal bills was dependent upon payment of the attorneys – something that could not have been accomplished without the submission of bills by the attorneys and payment to them.

In further seeking to dismiss the Complaint on the basis of inadequate proof of mailings, Defendants argue that Plaintiff has not met the requirements of Rule 9(b) because he pleads on information and belief with respect to the allegations that the bills and checks were mailed. But the mere **fact** of mailing is not an allegation governed by Rule 9(b). Beyond the fact that *Spool* does not identify the fact of a mailing as an element of a mail fraud claim that has to pleaded with particularity, it is also important to recognize that a "mailing represents [only] the 'individual act[]' prohibited, not the fraudulent scheme." *United States v. Ramirez*, 420 F.3d 134, 145 (2d Cir. 2005) (Citation omitted). As explained by Judge Lynch in *Zito v. Leasecomm Corporation*, No. 02 Civ. 8074, 2004 U.S. Dist. LEXIS 19778, at *33-34 (S.D.N.Y. Sept. 30, 2004):

> [I]n order to plead a RICO claim based on mail or wire fraud, "the telephone calls or mailings need not have contained misrepresentations themselves." *Miltland Raleigh-Durham. v. Myers*, 807 F. Supp. 1025, 1056 (S.D.N.Y. 1992), citing *Patrick Carter Assoc., Inc. v. Rent Stabilization Ass'n*, 1990 U.S. Dist. LEXIS 15975, No. 89 Civ. 7716, 1990 WL 195993, at *3 (S.D.N.Y. Nov. 28, 1990); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1994 U.S. Dist. LEXIS 2929, No. 91 Civ. 2923, 1994 WL 88129, at *9 (S.D.N.Y. Mar. 15, 1994) ("Even mailings that are innocent on their face may be in furtherance of a fraudulent scheme in violation of mail or wire fraud statutes because it is clear that the mailings themselves need not contain misrepresentations." (internal quotation marks omitted)). Rather, plaintiffs must merely assert that the use of the mails or the wires was accomplished "in furtherance of" the scheme alleged, which was itself fraudulent. *Myers*, 807 F. Supp.

11

at 1056. In other words, it is the fraudulence of the scheme itself, not any individual falsehood in any particular mail or wire communication, that must be alleged.

Plainly, since the mailings themselves need not be fraudulent,[6] Rule 9(b) does not apply to the mere fact of those mailings, just as it does not apply to the non-fraud elements of a RICO claim. *See* fn. 2 *supra.* The conclusion is further confirmed by the exception to Rule 9(b)'s particularity requirement which permits "matters peculiarly within a defendants knowledge [to be] plead 'on information and belief....'" *First Capital Asset Mgm't. v. Satinwood, Inc.*, 385 F.3d 159, 179-80 (2d Cir. 2004). Here, whether bills were received or checks were sent by mail or overnight courier is precisely the type of matter which is peculiarly within the Defendants' knowledge. That being said, it is entirely reasonable for Plaintiff to assume that the mails were used based upon the type of documents – bills and checks – that were being sent.[7]

### b.    Defendants Caused the Mailings

A defendant does not have to personally place an item in the mail to have "caused" the mailing within the meaning of the mail fraud statute. Rather, as noted, "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use

---

[6]    This principle – that the mailings need not themselves be fraudulent – renders Defendants' reliance upon *Beck v. Prupis*, 529 U.S. 494, 120 S.Ct. 1608 (2000) (MOL at p. 13), misplaced. In contrast to *Beck*, where the termination of the plaintiff's employment was not itself a racketeering act, *see* 529 U.S. at 499, 120 S.Ct. at 1613, the mailings alleged here are in fact acts of racketeering.

[7]    Serrins makes much of the fact that the Complaint does not allege that he paid himself with checks sent through the mail. (MOL at p. 10). However, that omission is actually evidence of how carefully the Complaint is pleaded. No such allegation was made because it is extremely unlikely that these bills or payments would have been mailed. Rather, the allegations concerning Serrins' payment to his firm are included for the purpose of demonstrating Serrins' involvement in the fraudulent scheme, as well as his intent (discussed *infra*). However, as demonstrated *infra*, Serrins is liable for the mailing of other bills and checks.

12

can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira*, 347 U.S. at 8-9, 74 S. Ct. at 363. Obviously, it is reasonably foreseeable that invoices and checks would be mailed where a scheme is predicated upon the billing and payment of legal services. *See United States v. Reed*, 639 F.2d 896, 906 (2d Cir. 1981) ("Reed submitted three checks drawn on a Canadian bank to Shearson's Huntington, New York office. It was plainly foreseeable that the checks would be mailed, for the purpose of collection."); *United States v. Mulhall*, 428 F.Supp.2d 82, 85-86 (D. Conn. 2006) ("It would be reasonable for a jury to infer that when he opened a checking account (as opposed to a savings or any other type of account), Mulhall intended to obtain checks to withdraw money from that account, and that it was reasonably foreseeable that the bank would request, and the printer would provide, those checks by mail."); *Healey v. Pyle*, No. 89 Civ. 6027, 1992 U.S. Dist. LEXIS 4152, at *19 (S.D.N.Y. Apr. 3, 1992) (Martin, D.J.) ("Furthermore, any mailing incidental to an essential part of the scheme ... including even ordinary business mailings incident to the collection and clearance of checks normally will be regarded as reasonably foreseeable." (*Quoting* J. Coffee, Jr. & C. Whitehead, *The Federalization of Fraud: Mail and Wire Fraud Statutes, in White Collar Crime: Business and Regulatory Offenses*, § 9.02, at 9-13 (O. Obermaier & R. Morvillo eds., 1990)).

### 3. Specific Intent to Defraud

In contrast to the allegations concerning the circumstances of a fraud, Rule 9(b) explicitly states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Nonetheless,

> [B]ecause "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] ... plaintiffs must allege facts that give rise to a strong

13

inference of fraudulent intent...." "The requisite 'strong inference' of fraud may be established ... by alleging facts to show that defendants had both motive and opportunity to commit fraud...."

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (Citations omitted). "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. N.Y. 2000) (Citation omitted).

As explained by the Court in *Novaks*:

> Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders, including: (1) the desire to maintain a high corporate credit rating..., or otherwise sustain the appearance of corporate profitability, or of the success of an investment...; and (2) the desire to maintain a high stock price in order to increase executive compensation ... or prolong the benefits of holding corporate office.... Rather, plaintiffs had to allege that defendants benefitted in some concrete and personal way from the purported fraud.

216 F.3d at 307-08 (internal quotations omitted).

Here, the Complaint meets this pleading requirement by alleging that (a) Silverman had a motive to use corporate funds to fund his personal life, (b) as evidenced by the fact that he paid his firm from the escrow account for non-corporate legal services performed for Silverman (Complaint at ¶¶ 37 and 40), Serrins had a motive to increase fees and easily secure payment for himself by performing personal legal services for Silverman and paying himself from the escrow account, (c) Silverman had the opportunity to advance the fraud because he signed checks for the company (Complaint at ¶¶ 21, 23, 34, 37, 38, 43, 45, 47, 50), and (d) Serrins had that opportunity because he had signatory power on the escrow account. (Complaint at ¶ 2, 27). This is sufficient to meet Plaintiff's obligation to plead intent. *See Tomoka Re Holdings, Inc. v. Loughlin*, No. 03 Civ. 9404,

2004 U.S. Dist. LEXIS 8931, at *13 (S.D.N.Y. May 19, 2004) (Buchwald, D.J.) ("[W]e see no basis for defendants' contention that plaintiffs have failed to satisfy Fed. R. Civ. P. 9(b)'s requirement that facts be pled which support an inference of fraudulent intent. Plaintiffs have alleged both a motive (*i.e.*, personal gain) and an opportunity (as officers of the companies involved) to commit fraud.") (Citation omitted).

Moreover, with respect to Serrins, the Complaint specifically alleges that he paid his own firm for personal, non-corporate legal services rendered to Silverman out of an escrow account he was obligated to maintain for the benefit of Silverseal.  (Complaint at ¶¶ 2, 9, 17).  As corporate counsel, he owed a duty to Silverseal not to use corporate funds to pay himself for non-corporate services rendered to Silverman.  These payments are thus powerful evidence of Serrins's fraudulent intent.

### 4.    Detrimental Reliance

The Complaint clearly alleges detrimental reliance on the part of Kurins in two ways.

**First**, Paragraph 16 of the Complaint explicitly alleges that Kurins agreed to fund the escrow account with $300,000, in reliance upon Silverman's false representation that the purpose of the escrow account was to create a "'rainy day' fund in the event that [a subsidiary of Silverseal] were to someday lose its major client and the parties needed cash to restructure."  (Complaint at ¶ 15).

**Second**, where, as here, a fiduciary conceals material facts, reliance necessarily flows from the relationship of trust that obligates full disclosure by the fiduciary.  As the Court explained in *TPL Associates, Inc. v. Helmsley-Spear, Inc.*, 146 A.D.2d 468, 471, 536 N.Y.S.2d 754, 756 (1st Dep't 1989), a "principal is entitled to rely on the agent's ... complete, undivided loyalty." *Accord Andersen v. Weinroth*, 48 A.D.3d 121, 136, 849 N.Y.S.25 210, 222 (1st Dep't 2007); *see also Zola*

15

*v. Gordon*, 685 F.Supp. 354, 365 (S.D.N.Y. 1988) (Conboy, D.J.) ("In New York, when the parties are engaged in a fiduciary relationship, the complaining party can claim the benefit of the fraudulent concealment doctrine even absent an affirmative misrepresentation by the party under the fiduciary duty. In such a relationship, fraudulent concealment occurs if the party under the fiduciary duty fails to meet its 'obligation to inform [the other party] of facts underlying the claim.'") (Citation omitted).

In their motion, Defendants ignore this latter principle of law, instead arguing that the Complaint is deficient because "[t]he complaint is bereft, as it must be, of allegations that Kurins ever requested to see, or was denied access to, the escrow account records." (MOL at p. 8). This is an absurd argument in a fraud case predicated upon a fiduciary's failure to disclose. In essence, Defendants claim that their failure to disclose was automatically excused because Kurins relieved them of that duty through his own failure to investigate whether Silverman and Serrins were acting improperly by not disclosing their fraud. The law does not so provide.

To be sure, "if [a] plaintiff was indeed alerted as to the probability of fraud, the court must examine plaintiff's response to ascertain whether he or she exercised due diligence in investigating the potential fraud." *Lenz v. Associated Inns and Restaurants*, 833 F.Supp. 362, 373 (S.D.N.Y. 1993). However, "[i]ssues of due diligence and constructive knowledge depend on inferences drawn from the facts of each particular case similar to the type of inferences that must be drawn in determining intent and good faith." *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir. 1979). Furthermore, "[t]here is no general rule as to the number or nature of facts which should trigger such an investigation. Rather, each case presents a universe of unique facts which must be evaluated in order to determine whether the alleged fraud should have been discovered...." *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F.Supp.2d 250, 258 (S.D.N.Y. 2005) (Haight, D.J.). It is for this

16

reason that "[t]he issue of reasonable reliance ... is a question of fact that is not appropriately resolved at the pleadings stage." *Truck-Lite Co., Inc. v. GSI US, Inc.*, No. 07-CV-68A, 2008 U.S. Dist. LEXIS 24560, at *8-9 (W.D.N.Y. Mar. 27, 2008); *see Spencer Trask Software and Information Services LLC v. Rpost International Limited*, 383 F.Supp.2d 428, 452 (S.D.N.Y. 2003) (Leisure, D.J.) ("[T]he Court finds that the determination of reasonable reliance is largely an issue of fact, inappropriate for resolution at this early [pleading] stage.").

\* \* \*

In sum, the Complaint adequately pleads (a) a scheme to defraud, (b) mailings or interstate carrier deliveries in furtherance of the scheme to defraud, (c) Defendants' fraudulent intent, and (d) Plaintiff's detrimental reliance. As such, Plaintiff has adequately pleaded multiple racketeering acts – *i.e..*, violations of 18 U.S.C. § 1341 – by the Defendants.

**B.    DEFENDANTS' ACTS OF RACKETEERING CONSTITUTE A PATTERN**

In order for multiple acts of racketeering to constitute a "pattern of racketeering activity," they must be "'related, and ... amount to or pose a threat of continued criminal activity.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999). The Complaint meets both of these requirements.

**First**, the specific acts – *i.e.*, the actual mailings – are "related." As explained by the Court in *H.J., Inc. v. Northwestern Bell Telephone, Inc.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901 (1989), racketeering acts are "related" where they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Plainly, the racketeering acts alleged in the Complaint meet this test.

17

**Second**, because the Complaint alleges that the racketeering acts took place over a period of 5 years – commencing in January of 2002 (Complaint at ¶ 10), and ending December of 2006 (Complaint at ¶ 51) – RICO's "continuity" requirement has also been met. *See Rothberg v. Chloe Foods Corp.*, No. CV-06-5712, 2007 U.S. Dist. LEXIS 53194, at *56 (E.D.N.Y July 25, 2007).

More generally, Defendants contend that the racketeering acts alleged here do not constitute a pattern because they are supposedly part of a "single scheme promulgated for the purpose of defrauding a single victim...." (MOL at p. 10). Factually, this claim is wrong because the Complaint explicitly alleges that the scheme was also directed at Federal and State taxing authorities. (Complaint at ¶¶ 52 and 57). Hence, the Complaint alleges three separate victims: Silverseal, the Internal Revenue Service, and New York State taxing authorities. The law is clear that taxing authorities can be victims of a wire or mail fraud scheme. *See Fountain v. United States*, 357 F.3d 250, 260 (2d Cir. 2004).

Moreover, as presaged by their exclusive reliance upon decisions from other Circuits, Defendants misstate governing Second Circuit law in contending that a RICO claim cannot be predicated upon a scheme to defraud a single victim. As the Court explained in *United States v. Indelicato*, 865 F.2d 1370, 1383 (1989):

> Nor, with respect to the requirement of continuity or threat of continuity, do we see any basis in RICO or its legislative history for the proposition that a RICO violation cannot be established without proof of more than one scheme, episode, or transaction, or without proof that the scheme pursuant to which the racketeering acts were performed is a scheme with no apparent termination date.... We doubt that Congress meant to exclude from the reach of RICO multiple acts of racketeering simply because they achieve their objective quickly or because they further but a single scheme.

18

That being said, we also recognize the fact that "multiple schemes are not required in all circumstances does not mean that the number and nature of the schemes alleged by a plaintiff in a given case are entirely irrelevant. Rather, a plaintiff must provide some basis for a court to conclude that defendants' activities were 'neither isolated nor sporadic.'" *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995). Hence, "[a]lthough continuity is 'primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists.'" *First Capital Mgm't*, 385 F.3d at 181 (Citation omitted).

Still, since continuity is primarily a temporal concept, the relevance of the other factors must necessarily diminish in relation to the period over which the racketeering acts were committed. *Fresh Meadows Food Services, LLC v. RB 175 Corp.*, No. 06-49050-CV, No. 07-0269-CV, 2008 U.S. App. LEXIS 13392 (2d Cir. June 24, 2008) (Summary Order),[8] makes our point. In *Fresh Meadows Food Services, LLC v. RB 175 Corp.*, No. 04-cv-4767, 2006 U.S. Dist. LEXIS 68647 (E.D.N.Y. Sept. 25, 2006), the District Court had dismissed a complaint on continuity grounds. There, the plaintiff had alleged that he had been defrauded by the defendant lessors of a property because they had hidden the fact that certain underground gasoline storage tanks had not been removed from a property that they leased to the plaintiff. *Id.* at *2. The complaint alleged just two acts of racketeering: First, in 1997, in anticipation of leasing the property to an oil company, the defendants retained a soil expert firm to prepare a report on whether the supposedly removed tanks had any environmental impact on the property. *Id.* at *4. In securing the report, the defendants

---

[8]      Since the Second Circuit's decision in *Fresh Meadows* was issued after January 1, 2007, Plaintiff may cite it in his brief. U.S.C. Fed. Rules App. Proc. R. 32.1.

allegedly faxed a false affidavit to the expert contending that the tanks had in fact been removed. *Id.* at *5. Second, in January of 2001, drafts of a lease containing a false representation about the tanks having been removed were sent between counsel via UPS. *Id.* at *7. The plaintiff alleged that these two communications were made in furtherance of a scheme to "'demise the Premises without disclosing the environmental situation.'" *Id.* at *12. Significantly, the opinion makes clear that the plaintiff was not in any way involved in or contemplating the leasing of the property at the time of the first racketeering act in 1997.

> The District Court dismissed the RICO claim, concluding:

> Plaintiffs also do not meet RICO's closed-ended continuity requirements. Closed-ended continuity is demonstrated by a "series of related predicates extending over a substantial period of time...." The Second Circuit generally requires a showing that the alleged racketeering activity lasted for over two years.... While plaintiffs allege two predicate acts, several years apart, these allegations are insufficient to establish a closed-ended pattern of racketeering activity. Looking to other factors, such as the "number and variety of [predicate] acts, the number of participants, the number of victims, and the presence of separate schemes" ... weighs against a finding of closed-ended continuity here.

> Plaintiffs have alleged neither a great number or variety of predicate acts. The predicate acts alleged are only the 1997 wire fraud and the 2001 mail fraud. Nor have they alleged the presence of separate schemes. The only victim is plaintiff Clarke, as he is the sole party to the lease.

On appeal, the Second Circuit reversed, stating, *inter alia:* **"Where the racketeering acts span nearly three and one-half years, as they do here, the presence or absence of the other factors are less critical**." 2008 U.S. App. LEXIS 13392, at *14-15 (Emphasis supplied). Here, of course, we have a five year period, which should be determinative. *See also Executive Photo, Inc. v. Norrell*, 765 F.Supp. 844, 846 (S.D.N.Y. 1991) (Leisure, D.J.) (Two and one-half years of repeated thefts from the Plaintiff established closed-ended continuity).

20

Moreover, continuity has been adequately pled here even if the Court takes into account the other factors identified above:

**First**, as noted above, this was not a single victim scheme. To the contrary, the use of corporate funds to pay personal expenses was also a fraud upon taxing authorities, because the company was taking deductions for expenses that were not properly deductible, but were in fact income to Silverman. (Complaint at ¶ 52).

**Second**, even as to Silverseal, the Complaint does not allege a single scheme. Rather, it alleges (a) a scheme to use corporate funds to pay for legal services actually rendered to Silverman personally, and (b) a scheme to funnel money to Silverman's girlfriend, Maria Weissman. (Complaint at ¶¶ 9, 12).

**Third,** there were also numerous participants in the scheme: (a) Silverman, (b) Silverman's mother (whose legal fees were also paid from the escrow account), (c) Serrins, (d) Weissman, and (e) the 4 law firms that were paid from the escrow account for non-corporate legal services to Silverman and his mother. With respect to the latter, we do not allege that these other firms were culpable. However, their necessary role – albeit innocent – in the scheme is plainly relevant to the issue of whether the racketeering acts were isolated or sporadic. This is made clear by Federal Sentencing Guideline § 3B1.1, which provides for a three level Guideline enhancement when a defendant was a manager or supervisor of criminal activity that was "otherwise extensive." 18 U.S.C.S. Appx. § 3B1.1. As explained by Application Note 3 to § 3B1.1, "[i]n assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." Plainly, if the use of innocent

21

participants is relevant to deciding how long a criminal defendant should spend in jail, it is surely relevant to the issue of whether a pattern of racketeering activity has been adequately alleged.

**Fourth**, the sheer number of racketeering acts – 33 – involving payments to 4 law firms and Weissman over a five year period makes it impossible to conclude that this conduct was sporadic or isolated. *Compare Feirstein v. Nanbar Realty Corp.*, 963 F.Supp. 254, 260 (S.D.N.Y. 1997) (Batts, D.J.) (Four annual mailings of fraudulent tax returns did not establish closed-ended continuity).

* * *

In sum, then, since Plaintiff has adequately alleged (a) the commission of more than two acts of racketeering by each defendant, and (b) a pattern of racketeering activity, Plaintiff's RICO claim may not be dismissed.

## POINT II

### PLAINTIFF'S STATE LAW CLAIMS SHOULD NOT BE DISMISSED

Plaintiff's State law claims are also adequately pleaded, and should not be dismissed.[9]

According to Defendants, the State law claims must be dismissed because they are claims of a derivative nature. However, the Complaint's Second and Third Claims for Relief are specifically brought as derivative actions in that Plaintiff seeks relief only "on behalf of Silverseal." (Complaint at ¶¶ 68 and 73). Moreover, as to those claims (as well as the RICO claim), the Complaint is not deficient because it has failed to join Silverseal as a party. In fact, Silverseal is listed as a plaintiff in Paragraph 7 of the Complaint, although it is not identified as such in the

---

[9]    We do not ask the Court to retain jurisdiction if the RICO claim is dismissed. We also note that this case is in Federal court only because Defendants removed it here.

caption. And while Defendants contend that Silverseal must be listed as a defendant and not a plaintiff, the case law they cite only demonstrates that Silverseal is an indispensable party; not that it must be listed as a defendant as opposed to a plaintiff. In any event, the Court has the right to rearrange nominal parties to an action without dismissing it, *see, e.g.*, *Travelers Indemnity Company of Illinois v. Metropolitan Life Insurance Company*, 798 F.Supp. 156, 158 (S.D.N.Y. 1992) (Leval, D.J.), or amend the caption *sua sponte*. *See Scott v. de Perio*, No. 02-CV-578A, 2005 U.S. Dist. LEXIS 5508 (W.D.N.Y. Mar. 25, 2005). Further, in all events, the Complaint could be amended for this purpose. *See* Fed. R. Civ. P. 15.[10]

Finally, the only claim in the case that is not being asserted derivatively is the Fourth Claim for Relief, in which Kurins seeks relief against Serrins directly. This claim is authorized by *Tzolis v. Wolff*, 2006 N.Y.S.2d 50851U at *8.

---

[10]    To be clear, Plaintiff also requests leave to replead if the Court dismisses any part of the Complaint.

23

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Complaint should be denied.

Dated: New York, New York
       August 14, 2008

                                    Respectfully submitted,

                                    JUDD BURSTEIN, P.C.


                                    By_____
                                    Judd Burstein (JB-9585)
                                    *Attorneys for Plaintiff*
                                    1790 Broadway, Suite 1501
                                    New York, New York 10019
                                    (212) 974-2400
                                    (212) 974-2944 (Fax)
                                    jburstein@burlaw.com

24