UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANDRIS KURINS, individually and as a Shareholder
of SILVERSEAL CORPORATION,

       Plaintiff,

  -v-                                                          No.  08 Civ. 6886 (LTS)(GWG)

JOHN SILVERMAN and ALAN SERRINS,

       Defendants.

-------------------------------------------------------x

## AMENDED MEMORANDUM OPINION AND ORDER

       This Amended Memorandum Opinion and Order, which reflects a revision of the "State Law Claims" paragraph on page 10, supersedes the Memorandum Opinion and Order filed on February 10, 2009.

       Plaintiff Andris Kurins ("Plaintiff" or "Kurins"), individually and as a shareholder of Silverseal Corporation ("Silverseal"), brought the above-captioned civil action alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and state law in New York Supreme Court.  Defendants John Silverman ("Silverman") and Alan Serrins ("Serrins") (collectively, "Defendants") removed the action to this Court pursuant to 28 U.S.C. § 1441(c) and 28 U.S.C. § 1331.  Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

BACKGROUND

---

[1] Defendants originally also moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.  However, it appears that Plaintiff re-served Defendants and Defendants have withdrawn, as moot, the Rule 12(b)(5) aspect of their motion.  See Defs' Reply Mem. at n. 1.

The following relevant facts are alleged in the Complaint. Silverseal is engaged, through its subsidiaries, in the business of corporate security and private investigation. (Compl. ¶ 8.) Plaintiff owns 49% of the outstanding stock of Silverseal and Defendant Silverman, the president of Silverseal, owns 51% of the outstanding stock. (Compl. ¶¶ 4-5.) Defendant Serrins served as primary outside counsel to Silverseal and personal counsel to Defendant Silverman and was a member of the company's board of directors. (Compl. ¶ 6.)

In January 2002, Defendants created an escrow account with Defendant Serrins's law firm. (Compl. ¶ 9.) Over the course of 2002, Silverman arranged for a number of deposits of Silverseal funds into the escrow account and, on or about February 26, 2002, Serrins authorized a payment to Maria Weissman ("Weissman") (an attorney alleged to have been Defendant Silverman's girlfriend at the time of the payment). Silverseal's books do not, however, reflect that Weissman ever submitted an invoice. (Compl. ¶¶ 9-14.) The deposits and the payment were sent by mail or overnight interstate carrier. (Id.)

Plaintiff was unaware of the existence of the escrow account until late 2002, when Silverman advised Plaintiff that Silverseal should create a "rainy day" fund to protect against the possible loss of a major client. (Compl. ¶ 15.) Plaintiff agreed to the deposit of $300,000 in the escrow account, but was not aware that the escrow account had existed for nearly a year and was already in use. (Compl. ¶ 16.) Over the course of the next four years, Defendant Silverman arranged additional deposits to the escrow account, which were sent to Defendant Serrins by mail or overnight interstate carrier (Compl. ¶¶ 39, 48), and Defendant Serrins authorized additional payments from the escrow account, which were mailed or sent by overnight interstate carrier, (Compl. ¶¶ 21, 23, 24, 34, 37, 38, 40, 43, 45, 47, 50, 51). The checks written on the escrow

account were in payment for a number of invoices that included charges for personal legal services for Defendant Silverman that were not proper Silverseal expenses.  (See, e.g., Compl. ¶¶ 20-21 (payment by check written on escrow account for invoice including "a matter entitled 'real Estate Entity (Matrimonial)'"); ¶¶ 22-23 (payment for invoice including legal services rendered in connection with "a matter entitled 'Estate and Will Planning'"); ¶ 37 (payment for an invoice for legal services related to "Montclair Multiples"); ¶ 40 (check from escrow account in payment for invoice including personal Silverman legal expenses, including the drafting of an "April 25, 2005 letter to a co-op board").)  Other payments were made for invoices that included legal services rendered to Yolanda Rubel, Silverman's mother.  (Compl. ¶¶ 30; 34.)  The invoices and/or the checks issued in payment for the invoices were mailed or sent by overnight interstate carrier.  The Complaint alleges that additional improper payments, some of them from the escrow account, were made to Weissman, and that invoices and payments in connection with these amounts were sent by mail or interstate carrier.  (Compl. ¶¶ 29-31.)  According to the Complaint, all of the improper payments described in the Complaint were reported to federal and state taxing authorities as legitimate Silverseal business expenses, and not as part of Defendant Silverman's income.  (Compl. ¶ 52.)

On the basis of the foregoing allegations, Plaintiff asserts that Defendants participated in the operation and management of Silverseal through a pattern of racketeering activity in violation of the RICO statute.  Plaintiff also asserts that this conduct violated state law.  Plaintiff originally brought this action in New York State Supreme Court and it appears from the briefing that there is pre-existing litigation in the state Supreme Court for valuation of Plaintiff's Silverseal shares in a buy-out pursuant to New York Business Corporation Law section 1118.  (See Defs' Mem. P. 1-2.)  Although the Complaint does not explicitly identify the RICO subsection that

Defendants allegedly violated, the language of the Complaint and Plaintiff's memorandum in opposition indicate that Plaintiff is alleging a section 1962(c) violation based on predicate acts of mail and wire fraud in connection with the allegedly fraudulent scheme to use Silverseal's funds to make payments that were not legitimate expenditures of the Company's funds, and the Court evaluates Plaintiff's claim as such.  (See Pl's Opp. at 1-2; Compl. ¶¶ 56-63.)

The Court has thoroughly reviewed the parties' submissions and, for the reasons that follow, grants in part Defendants' motion pursuant to Rule 12(b)(6) to dismiss Plaintiff's Complaint, with leave to replead.

## DISCUSSION

In deciding a motion to dismiss for failure to state a claim, the Court accepts the factual allegations in the complaint as true, and draws all reasonable inferences in Plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  The "complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)). Allegations of fraudulent predicate acts under RICO are subject to the heightened pleading standard of Rule 9(b).  First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004); Fed. R. Civ. P. 9(b).  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

### RICO Claim

A plaintiff alleging a RICO violation must allege: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001).  Under section 1962(c),"[i]t [is] unlawful for any person employed by or associated with any enterprise

engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C.A. § 1962(c) (West 2000).  The statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity;" "racketeering activity" includes any act that is indictable under 18 U.S.C. § 1341, the mail fraud statute, or under 18 U.S.C. § 1343, the wire fraud statute.  18 U.S.C.A. § 1961(4) (West 2000); 18 U.S.C.A. § 1961(1)(B) (West 2008).  The statute defines a "pattern of racketeering activity" as requiring at least two acts of racketeering activity.  Id. at § 1961(5).  Thus, "to establish to a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in [the conduct of the business of] an enterprise, the activities of which affected interstate or foreign commerce."  DeFalco, 244 F.3d at 306.

    Defendants contend that Plaintiff has failed to sufficiently allege the participation in the enterprise conduct element of a 1962(c) violation.[2]  In Reves v. Ernst & Young, 507 U.S. 170 (1993), the Supreme Court resolved a disagreement in the Courts of Appeal as to the meaning of the phrase "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs."  The Reves Court held that "'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs,' § 1962(c), one must participate in the operation or management of the enterprise itself."  Reves, 507 U.S. at 185.  In the Second Circuit, this "'operation or management'

---

[2] To the extent that Defendants' argument regarding "conduct" is actually an attack on the sufficiency of Plaintiff's allegations of "vertical relatedness," the Court addresses that argument below, in connection with the Plaintiff's allegations of a pattern of racketeering.

test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." First Capital, 385 F.3d at 176 (internal citations omitted).  Plaintiff's allegations that Defendants controlled and disbursed Silverseal's funds are sufficient to clearly frame participation in the operation and management of Silverseal, whether or not the funds were applied to legitimate business expenses.  See Reves, 507 U.S. at 185 ("Of course, 'outsiders' may be liable under § 1962(c) if they are "associated with" an enterprise and participate in the conduct of its affairs - that is, participate in the operation or management of the enterprise itself.").

Defendants further contend that Plaintiff has failed to allege a pattern of racketeering activity, as required for a Section 1962(c) violation, and thus, has failed to allege a RICO claim. The statutory requirement that there be at least two acts of racketeering activity, "does not[, however,] so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such pattern." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237 (1989).  A pattern of racketeering activity requires that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J., Inc., 492 U.S. at 239.

In H.J. the Supreme Court explained that the relatedness element of the pattern requirement is defined by borrowing from the dangerous special offender sentencing provision in the same statute that included the RICO laws. H.J., Inc., 492 U.S. at 239-240; see also Fresh Meadow Food Services, LLC v. RB 175 Corp., 282 Fed. Appx. 94, 98 (2d Cir. 2008).  Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J., Inc., 492 U.S. at 240 ((quoting 18 U.S.C. § 3575(e) (repealed 1984)).  The Second Circuit has further developed the relatedness requirement to require both horizontal relatedness (that the predicate acts related to each other) and vertical relatedness (that the predicate acts be

related to the enterprise). U.S. v. Daidone, 471 F.3d 371, 375 (2d Cir. 2006). Vertical relatedness can be established by showing that the defendant "was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise." Id.

In this case, the alleged acts of fraud satisfy both elements of the relatedness requirement. The predicate acts of mail and wire fraud involve deposits, invoices, checks and authorizations on a single escrow account in furtherance of Defendants' alleged scheme to funnel money out of Silverseal. The acts alleged were neither isolated nor sporadic. Additionally, Plaintiff has alleged facts indicating that Defendants were able to commit the alleged acts of mail and wire fraud by virtue of their position as, with respect to Defendant Silverman, the President and majority shareholder of Silverseal, and with respect to Defendant Serrins, not only his position as outside counsel, but also his access to and approval of payments from the escrow account. Thus, the question of whether the pattern requirement has been met hinges on Plaintiff's allegations with respect to the continuity of the criminal activity.

"The 'continuity' requirement reflects Congress' intention to target long-term criminal conduct in enacting RICO." Skylon Corp. v. Guilford Mills, Inc., No. 93 Civ. 5581, 1997 WL 88894, at *4 (S.D.N.Y. March 03, 1997) (citing H.J. Inc., 492 U.S. at 242). In H.J. Inc., the Supreme Court specified that continuity did not require "multiple schemes," as some circuits had previously required, but that what must be shown is "continuity of racketeering activity, or its threat, simpliciter." H.J. Inc., 492 U.S. at 241. The Court then outlined two means by which the continuity requirement could be satisfied – by showing either an "open-ended" pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a "closed-ended" pattern of racketeering activity (i.e., past criminal conduct "extending over a

substantial period of time"). Id. at 242; GICC Capital Corp. v. Technology Finance Group, 67 F.3d 463, 466 (2d Cir. 1995).

To satisfy open-ended continuity, the plaintiff must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. First Capital, 385 F.3d at 180. Plaintiff has discovered the alleged fraud and has not alleged an ongoing threat of criminal activity, and there is a pending buy-out proceeding with respect to Plaintiff's interest in the company. Thus, the Complaint does not allege open-ended continuity. First Capital, 385 F.3d at 180-81 (no open-ended continuity in inherently terminable bankruptcy fraud, where the scheme had been concluded); GICC Capital, 67 F.3d at 466 (no open-ended continuity where scheme was "inherently terminable" because "[i]t defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot."). The Court must therefore determine whether Plaintiff has adequately alleged closed-ended continuity.

Closed-ended continuity is "primarily a temporal concept." DeFalco, 244 F.3d at 322; see also Fresh Meadow, 282 Fed. Appx. at 99 ("Whether closed-ended or open-ended, continuity is 'centrally a temporal concept.'" (citing H.J. Inc., 492 U.S. at 242)); see also H.J. Inc., 492 U.S. at 251 ("petitioners claim that the racketeering predicates occurred with some frequency over at least a 6-year period, which may be sufficient to satisfy the continuity requirement"); DeFalco, 244 F.3d at 322 (no closed-ended continuity where predicate acts spanned a period of a year and a half); see also Cofacredit S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 243 (2d Cir. 1999) (span of one year insufficient length to demonstrate closed-ended continuity). The Second Circuit has generally held that a two-year period is necessary but not sufficient for establishing closed-ended continuity. First Capital, 385 F.3d at 181. Additionally, although courts

have considered a number of non-dispositive factors in determining the existence of closed-ended continuity, including "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes," GICC Capital, 67 F.3d at 467, "those factors are more significant in cases where the periods of time over which the alleged racketeering acts borders on 'substantial.'" Fresh Meadow, 282 Fed. Appx. at 99; see also GICC Capital, 67 F.3d at 467 (applying the non-dispositive factors where the alleged pattern of racketeering lasted for a period of eleven months); Casio Computer Co., Ltd. v. Sayo, No. 98 Civ. 3772, 2000 WL 1877516, at *12 (S.D.N.Y. October 13, 2000) (applying factors where predicate activity occurred over a period of sixteen months). Where, as here, the allegations span a period of significantly more than two years, "the presence or absence of the other factors is less critical." Fresh Meadow, 282 Fed. Appx. at 99 (factors less critical where the alleged racketeering activity spanned a period of nearly three and one-half years).

    Plaintiff here alleges predicate acts of mail and wire fraud that occurred over a period of almost five years. This period far exceeds the two-year time frame that courts have found bordering on "substantial," and thus the other non-dispositive factors that courts have considered in determining the existence of closed-ended continuity are less critical in this case. Additionally, some of the other factors weigh in favor of finding closed-ended continuity. Specifically, Plaintiff has alleged multiple acts over this extensive period of time and multiple participants. Thus, the Court finds that Plaintiff has sufficiently alleged a pattern of racketeering activity, and has alleged a 1962(c) violation.

    As noted above, the third component of a RICO claim is injury to business or property. Plaintiff alleges injury to Silverseal (Compl. ¶ 63), but, although he now contends that the claim is brought on behalf of Silverseal, has not named Silverseal as a party to the action. The

RICO claim will, accordingly be dismissed with leave to replead in this regard.

Defendants also argues that the RICO claims fail to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure insofar as they are based on allegedly fraudulent acts, because the operative matters are plead "on information and belief."  Rule 9(b) requires that the circumstances constituting fraud be stated with particularity.  Plaintiff has met this requirement – the complaint identifies the communications on which the wire and mail fraud allegations are based, including their content, dates, the individuals involved, and the way in which those communications were fraudulent, as well as the nature of the alleged scheme to defraud and the participants in that scheme.  See Spool v. World Child Intern. Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008) ("Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent.") (internal quotations and citations omitted).

State Law Claims

Defendants' motion identifies a similar failure to name Silverseal as a party with respect to Plaintiff's state law claims, two of which are explicitly stated in derivative fashion in the body of the complaint (see Compl. ¶¶ 67, 72, 73).  Plaintiff has requested leave to amend; leave is hereby granted.

CONCLUSION

In light of Plaintiff's failure to plead his derivative claims in a proper fashion and name Silverseal appropriately as a party to the action, Defendants' motion to dismiss the complaint is granted, without prejudice to repleading to address Silverseal's status as a party to the action.

Plaintiff must file and serve any amended complaint by February 20, 2009, providing a courtesy copy for Chambers.  In the absence of a timely-filed amendment, count one

will be dismissed with prejudice the Court will decline to exercise jurisdiction of the state claims, all without further advance notice to Plaintiff.

The initial pretrial conference is adjourned to March 13, 2009, at 12:15 p.m. and the related deadlines are modified accordingly. This Order resolves docket entry no. 3.

SO ORDERED.

Dated: New York, New York
February 11, 2009

LAURA TAYLOR SWAIN
United States District Judge